RCD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

- v. -

DANIEL LEO,
ANTHONY PALUMBO,
CHARLES SALZANO,
ROCCO PETROZZA,
FELICE MASULLO,
PATSY AVERSA,
VINCENT COTONA,
JOSEPH LEO,
JOSEPH PETULLO,
ANTHONY MASULLO,
ANGELO MASULLO, and
ARTHUR BOLAND,

Defendants.

- - - - - - - - - - - - - - - - - x

SUPERSEDING INDICTMENT

S1 08 Cr. 874 (RJH)

**RACKETEERING CHARGES**

**COUNT ONE**
**Racketeering Violation**

The Grand Jury charges:

**The Enterprise**

1. At all times relevant to this Indictment, DANIEL LEO, CHARLES SALZANO, ROCCO PETROZZA, FELICE MASULLO, PATSY AVERSA, VINCENT COTONA, JOSEPH LEO, JOSEPH PETULLO, ANTHONY MASULLO, and ANGELO MASULLO, the defendants, and others known and unknown, were members and associates of the Genovese Organized Crime Family of La Cosa Nostra (the "Genovese Organized Crime Family"). The Genovese Organized Crime Family was a criminal organization whose members and associates engaged in crimes

including murder, assault, robbery, extortion, stolen property crimes, loansharking, gambling, and other crimes.

2. The Genovese Organized Crime Family, including its leadership, membership, and associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4) -- that is, a group of individuals associated in fact. This enterprise was engaged in, and its activities affected, interstate and foreign commerce. The Genovese Organized Crime Family was an organized criminal group based in New York City that operated in the Southern District of New York and elsewhere and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Genovese Organized Crime Family was referred to by its members and associates in various ways, including as a "cosa nostra," a "Family," and "this thing of ours."

3. The Genovese Organized Crime Family was part of a nationwide criminal organization known by various names, including the "Mafia" and "La Cosa Nostra" ("LCN"), which operated through entities known as "Families." The Genovese Organized Crime Family took its name from one of its early leaders, Vito Genovese. In addition to the Genovese Organized Crime Family, five other Families operated in the New York City and New Jersey area, namely, the Gambino Organized Crime Family

of LCN, the Luchese Organized Crime Family of LCN, the Colombo Organized Crime Family of LCN, the Bonanno Organized Crime Family of LCN, and the Decavalcante Organized Crime Family of LCN.

4. The Genovese Organized Crime Family operated through groups of individuals known as "crews" and "regimes," most of which were based in New York City. Each "crew" had as its leader a person known as a "Caporegime," "Capo," "Captain," or "Skipper," and consisted of "made" members, sometimes known as "Soldiers," "wiseguys," "friends of ours," and "good fellows." Soldiers were aided in their criminal endeavors by other trusted individuals, known as "associates," who sometimes were referred to as "connected" or identified as "with" a Soldier or other member of the Family. Associates participated in the various activities of the crew and its members.

5. Each Capo was responsible for supervising the criminal activities of his crew and provided Soldiers and associates with support and protection. In return, the Capo typically received a share of the illegal earnings of each of his crew's Soldiers and associates, which was sometimes referred to as "tribute."

6. Above the Capos were the highest-ranking members of the Genovese Organized Crime Family, commonly referred to as the "Administration." The head of the Genovese Organized Crime Family was known as the "Boss," who was ordinarily assisted by an

"Underboss" and a "Consigliere," or counselor. The Boss, Underboss, and Consigliere were responsible for, among other things, setting policy, resolving disputes between and among members of the Genovese Organized Crime Family, and resolving disputes between members of the Genovese Organized Crime Family and members of other criminal organizations. The Administration of the Genovese Organized Crime Family was also responsible for overseeing the criminal activities of the Family's Capos, Soldiers and associates, and was at times called upon to make decisions regarding those criminal endeavors.

7. The Boss, Underboss, and Consigliere (whether official or acting) and, at times, the members of the ruling panel, supervised, supported, protected, and disciplined the Capos, Soldiers, and associates, and regularly received reports regarding their various activities.

8. The Genovese Organized Crime Family has taken significant steps to protect and insulate its Boss and other Administration members from detection and scrutiny by law enforcement. These steps include appointing multi-member committees, and/or "panels," to oversee the daily affairs of the Genovese Organized Crime Family; and naming temporary, or "Acting" Bosses and other Administration positions.

**The Defendants**

9. At all times relevant to this Indictment, DANIEL LEO, CHARLES SALZANO, ROCCO PETROZZA, FELICE MASULLO, PATSY AVERSA, VINCENT COTONA, JOSEPH LEO, JOSEPH PETULLO, ANTHONY MASULLO, and ANGELO MASULLO, the defendants, were members and associates of the enterprise, the Genovese Organized Crime Family. Each of them participated in the operation and the management of the enterprise as follows:

a. DANIEL LEO, the defendant, was, at various times relevant to this Indictment, a Soldier, Capo, and Acting Boss of the Genovese Organized Crime Family. Before serving as Acting Boss, LEO was a Soldier in the crew of Capo and Acting Boss Dominick Cirillo, a/k/a "Quiet Dom," and then a powerful Capo who controlled a crew of Soldiers and associates based in the Bronx, New York. LEO was a member of a ruling committee or panel of the Family in or about 2000, and he became the Acting Boss in or about 2005. In or about 2006, LEO promoted Soldier and Acting Capo ANTHONY PALUMBO to oversee the New Jersey operations of the Genovese Crime Family. During the time LEO served as Acting Boss, he continued to supervise his own crew, which included CHARLES SALZANO, JOSEPH LEO and others, who committed loansharking, extortion, and illegal gambling offenses.

b. CHARLES SALZANO, the defendant, was, at various times relevant to this Indictment, a Soldier in the

Genovese Organized Crime Family, supervised by DANIEL LEO. Among other crimes, SALZANO has participated in extortions, loansnarking, and illegal gambling offenses.

c. ROCCO PETROZZA, the defendant, was, at various times relevant to this Indictment, a Soldier in the Genovese Organized Crime Family, and a member of the crew of ANTHONY PALUMBO. Among other crimes, PETROZZA has participated in loansharking and extortion offenses.

d. FELICE MASULLO, the defendant, was, at various times relevant to this Indictment, an associate of the Genovese Organized Crime Family, who has been proposed to be made a Soldier in the Genovese Family. MASULLO was in PALUMBO's crew, and MASULLO typically functioned as PALUMBO's driver, accompanying him to meetings with other members and associates of the Genovese Family. MASULLO also delivered messages between PALUMBO and other members and associates of the Genovese Family. In addition, FELICE MASULLO operated loansharking and gambling businesses, with the assistance of several associates, including his brothers ANGELO MASULLO and ANTHONY MASULLO. In addition, FELICE MASULLO financed narcotics transactions by providing cash to an individual so that he could buy significant quantities of crack cocaine and cocaine.

e. PATSY AVERSA, the defendant, was, at various times relevant to this Indictment, an associate of the Genovese

Organized Crime Family. Among AVERSA's criminal activities was the extortion of the owners and operators of a bartending school in Jersey City, New Jersey.

f. VINCENT COTONA, the defendant, was, at various times relevant to this Indictment, an associate of the Genovese Organized Crime Family, who worked closely with PATSY AVERSA. Among other crimes, COTONA has participated in loansharking and extortion offenses.

g. JOSEPH LEO, the defendant, was, at various times relevant to this Indictment, an associate of the Genovese Organized Crime Family. JOSEPH LEO was in the crew of his uncle DANIEL LEO. Among other crimes, JOSEPH LEO has participated in extortions, loansharking and gambling offenses.

h. JOSEPH PETULLO, the defendant, was, at various times relevant to this Indictment, an associate of the Genovese Organized Crime Family in the crew of ANTHONY PALUMBO. Among other crimes, PETULLO has participated in loansharking and extortion offenses.

i. ANTHONY MASULLO and ANGELO MASULLO, the defendants, were, at various times relevant to this Indictment, associates of the Genovese Organized Crime Family. They are FELICE MASULLO's brothers and assisted him in his criminal activities, including his loansharking, narcotics, and gambling businesses.

**Purposes of the Enterprise**

10. The purposes of the enterprise included the following:

a. Enriching the leaders, members, and associates of the enterprise through, among other things: (i) the extortionate control of businesses, persons, and property through threats of violence and other harm; (ii) the making, financing, and collection of extortionate extensions of credit, commonly known as "loansharking;" and (iii) the operation of illegal gambling businesses;

b. Preserving and augmenting the power, territory, and financial profits of the enterprise through intimidation, violence, and threats of violence and other harm; and

c. Keeping victims and citizens in fear of the enterprise and its leaders, members, and associates by: (i) identifying the enterprise, its members, and its associates with La Cosa Nostra or the "Mafia;" (ii) causing and threatening to cause economic harm; and (iii) committing and threatening to commit physical violence and other harm.

**Means and Methods of the Enterprise**

11. Among the means and methods by which the defendants and other enterprise members and associates conducted

and participated in the conduct of the affairs of the enterprise were the following:

a. Members and associates of the enterprise engaged in acts of violence to protect and expand the enterprise's business and criminal operations.

b. Members and associates of the enterprise promoted a climate of fear in the community through the use, and threat of use, of violence and other harm, including assault and murder.

c. Members and associates of the enterprise generated income for the enterprise through loansharking, extortion, operation of illegal gambling businesses, narcotics trafficking, and crimes of violence, including murder and assault, and other crimes.

d. Members and associates of the enterprise engaged in extortion and loansharking to obtain interests in, and acquire control of, legitimate businesses.

e. Members and associates of the enterprise at times engaged in criminal conduct or coordinated their criminal activities with leaders, members, and associates of other LCN Families. At other times, members and associates of the enterprise met with leaders, members, and associates of other LCN Families to resolve disputes over their criminal activities.

f. Members and associates of the enterprise used various techniques to avoid law enforcement scrutiny of the enterprise's criminal activities. Members and associates of the enterprise typically used cryptic or coded language to make arrangements for meetings and to refer to other members and associates of the enterprise, and took other steps to frustrate law enforcement's attempts to overhear their discussions. Members and associates of the enterprise also engaged in other evasive conduct, such as whispering and speaking in hushed tones in an effort to obstruct potential law enforcement eavesdropping, and not specifying the names of those about whom they were speaking.

**The Racketeering Violation**

12. From at least in or about 2003, up through and including in or about the date of this Indictment, in the Southern District of New York and elsewhere, DANIEL LEO, CHARLES SALZANO, ROCCO PETROZZA, FELICE MASULLO, PATSY AVERSA, VINCENT COTONA, JOSEPH LEO, JOSEPH PETULLO, ANTHONY MASULLO, and ANGELO MASULLO, the defendants, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 11 above, namely, the Genovese Organized Crime Family, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, willfully, and knowingly did conduct and

participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), that is, through the commission of the following racketeering acts:

**The Pattern of Racketeering**

13. The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisted of the following acts:

**Racketeering Act One - Extortionate Loans To Victim-1**

14. From in or about 2003, up through and including in or about 2004, in the Southern District of New York and elsewhere, VINCENT COTONA, the defendant, made extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, loans to Victim-1, the owner and operator of bartending training schools in New York City and New Jersey, in violation of Title 18, United States Code, Sections 892 and 2.

**Racketeering Act Two - Use Of Extortionate Means To Collect Loans From Victim-1**

15. The defendants named below committed the following acts of racketeering, either one of which alone constitutes the commission of Racketeering Act Two:

a. From in or about 2003, up through and including in or about 2004, in the Southern District of New York and elsewhere, PATSY AVERSA and VINCENT COTONA, the defendants, and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to participate in the use of extortionate means to collect and attempt to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, AVERSA and COTONA agreed to threaten Victim-1 with physical violence and other harm if he did not repay various loans and debts, in violation of Title 18, United States Code, Section 894.

b. From in or about 2003, up through and including in or about 2004, in the Southern District of New York and elsewhere, PATSY AVERSA and VINCENT COTONA, the defendants, unlawfully, willfully, and knowingly participated in the use of extortionate means to collect and attempt to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, AVERSA and COTONA threatened Victim-1 with physical violence and other harm if he did not repay various loans and debts, in violation of Title 18, United States Code, Sections 894 and 2.

**Racketeering Act Three - Extortionate Loans to Victim-1 and Victim-2**

16. The defendants named below committed the following acts of racketeering, any one of which alone constitutes the commission of Racketeering Act Three:

a. From in or about 2006, up to and including in or about 2007, in the Southern District of New York and elsewhere, JOSEPH PETULLO, the defendant, unlawfully, willfully, and knowingly made extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, loans and other extensions of credit totaling approximately $40,000 to Victim-2, an owner and operator of a bartending training school in Jersey City, New Jersey ("the Jersey City Bartending School"), in violation of Title 18, United States Code, Sections 892 and 2.

b. From in or about 2006, up to and including in or about 2007, in the Southern District of New York and elsewhere, JOSEPH PETULLO and PATSY AVERSA, the defendants, and others known and unknown, unlawfully, willfully, and knowingly conspired, confederated, and agreed together and with each other to make extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, loans and other extensions of credit totaling approximately $40,000 to Victim-1 and Victim-2, in violation of Title 18, United States Code, Section 892.

c. From in or about 2006, up to and including in or about 2007, in the Southern District of New York and elsewhere, JOSEPH PETULLO and PATSY AVERSA, the defendants, unlawfully, willfully, and knowingly made extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, loans and other extensions of credit totaling approximately $40,000 to Victim-1 and Victim-2, in violation of Title 18, United States Code, Sections 892 and 2.

d. From in or about 2006, up to and including in or about 2007, in the Southern District of New York and elsewhere, ROCCO PETROZZA, the defendant, unlawfully, willfully, and knowingly made extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, loans and other extensions of credit totaling approximately $30,000 to Victim-2, in violation of Title 18, United States Code, Sections 892 and 2.

e. From in or about 2006, up to and including in or about 2007, in the Southern District of New York and elsewhere, ROCCO PETROZZA and PATSY AVERSA, the defendants, and others known and unknown, unlawfully, willfully, and knowingly conspired, confederated, and agreed together and with each other to make extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, loans and other extensions of credit totaling approximately

$30,000 to Victim-1 and Victim-2, in violation of Title 18, United States Code, Section 892.

f. From in or about 2006, up to and including in or about 2007, in the Southern District of New York and elsewhere, ROCCO PETROZZA and PATSY AVERSA, the defendants, unlawfully, willfully, and knowingly made extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, loans and other extensions of credit totaling approximately $30,000 to Victim-1 and Victim-2, in violation of Title 18, United States Code, Sections 892 and 2.

**Racketeering Act Four - Extortion of Victim-1 and Victim-2**

17. The defendants named below committed the following acts of racketeering, any one of which alone constitutes the commission of Racketeering Act Four:

a. From in or about 2006, up to and including in or about 2007, in the Southern District of New York and elsewhere, ROCCO PETROZZA, FELICE MASULLO, PATSY AVERSA, VINCENT COTONA, and JOSEPH PETULLO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, to wit, Victim-1 and Victim-2, which consent was induced by the wrongful use of actual

and threatened force, violence, and fear, and thereby did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), in violation of Title 18, United States Code, Section 1951.

b. From in or about 2006, up to and including in or about 2007, in the Southern District of New York and elsewhere, ROCCO PETROZZA, FELICE MASULLO, PATSY AVERSA, VINCENT COTONA, and JOSEPH PETULLO, the defendants, unlawfully, willfully, and knowingly committed extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, to wit, Victim-1 and Victim-2, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), in violation of Title 18, United States Code, Sections 1951 and 2.

c. From in or about 2006, up to and including in or about 2007, in the Southern District of New York and elsewhere, ROCCO PETROZZA, FELICE MASULLO, PATSY AVERSA, VINCENT COTONA, and JOSEPH PETULLO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly combined,

conspired, confederated, and agreed together and with each other to participate in the use of extortionate means to collect and attempt to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, PETROZZA, MASULLO, AVERSA, COTONA, and PETULLO collected and attempted to collect approximately $70,000 in debt from Victim-1 and Victim-2 through implicit and explicit threats of the use of violence and other harm if Victim-1 and Victim-2 did not repay, in violation of Title 18, United States Code, Section 894.

d. In or about 2006, in the Southern District of New York and elsewhere, ROCCO PETROZZA, FELICE MASULLO, PATSY AVERSA, VINCENT COTONA, and JOSEPH PETULLO, the defendants, unlawfully, willfully, and knowingly participated in the use of extortionate means to collect and attempt to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, PETROZZA, MASULLO, AVERSA, COTONA, and PETULLO collected and attempted to collect approximately $70,000 in debt from Victim-1 and Victim-2 through implicit and explicit threats of the use of violence and other harm if Victim-1 and Victim-2 did not repay, in violation of Title 18, United States Code, Sections 894 and 2.

**Racketeering Act Five - Use Of Extortionate Means To Collect Loans From Victim-3**

18. From in or about 2002, up through and including on or about 2006, in the Southern District of New York and elsewhere, CHARLES SALZANO, the defendant, unlawfully, willfully, and knowingly participated in the use of extortionate means to collect and attempt to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, SALZANO threatened Victim-3 with physical violence and other harm if he did not repay various loans and debts, in violation of Title 18, United States Code, Sections 894 and 2.

**Racketeering Act Six - Use Of Extortionate Means To Collect Loans From Victim-4**

19. The defendants named below committed the following acts of racketeering, either one of which alone constitutes the commission of Racketeering Act Six:

a. In or about 2006, in the Southern District of New York and elsewhere, DANIEL LEO and JOSEPH LEO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to participate in the use of extortionate means to collect and attempt to collect extensions of credit as that term is defined in Title 18, United States

Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, DANIEL LEO and JOSEPH LEO collected payments from Victim-4 based on the implicit threat of the use of violence and other harm if Victim-4 did not repay various loans and debts, in violation of Title 18, United States Code, Section 894.

b. In or about 2006, in the Southern District of New York and elsewhere, DANIEL LEO and JOSEPH LEO, the defendants, unlawfully, willfully, and knowingly participated in the use of extortionate means to collect and attempt to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, DANIEL LEO and JOSEPH LEO collected payments from Victim-4 based on the implicit threat of the use of violence and other harm if Victim-4 did not repay various loans and debts, in violation of Title 18, United States Code, Sections 894 and 2.

**Racketeering Act Seven - Extortionate Loans to Victim-5**

20. In or about 2006, in the Southern District of New York and elsewhere, JOSEPH LEO, the defendant, unlawfully, willfully, and knowingly made extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, loans totaling approximately $13,000 to Victim-5, in violation of Title 18, United States Code, Sections 892 and 2.

**Racketeering Act Eight - Use Of Extortionate Means To Collect Loans From Victim-5**

21. In or about 2006, in the Southern District of New York and elsewhere, JOSEPH LEO, the defendant, participated in the use of extortionate means to collect and attempt to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, JOSEPH LEO collected payments from Victim-5 based on the implicit threat of the use of violence and other harm if Victim-5 did not repay various loans and debts, in violation of Title 18, United States Code, Sections 894 and 2.

**Racketeering Act Nine - Extortionate Loans To Victim-6**

22. The defendants named below committed the following acts of racketeering, either one of which alone constitutes the commission of Racketeering Act Nine:

a. In or about 2006, in the Southern District of New York and elsewhere, DANIEL LEO and JOSEPH LEO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to make extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, loans totaling approximately $20,000 to Victim-6, in violation of Title 18, United States Code, Section 892.

b. In or about 2006, in the Southern District of New York and elsewhere, DANIEL LEO and JOSEPH LEO, the defendants, unlawfully, willfully, and knowingly made extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, loans totaling approximately $20,000 to Victim-6, in violation of Title 18, United States Code, Sections 892 and 2.

**Racketeering Act Ten - Extortionate Loans To Victim-7**

23. The defendants named below committed the following acts of racketeering, either one of which alone constitutes the commission of Racketeering Act Ten:

a. In or about 2006, in the Southern District of New York and elsewhere, DANIEL LEO and JOSEPH LEO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to make extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, loans totaling several thousand dollars to Victim-7, in violation of Title 18, United States Code, Section 892.

b. In or about 2006, in the Southern District of New York and elsewhere, DANIEL LEO and JOSEPH LEO, the defendants, unlawfully, willfully, and knowingly made extortionate extensions of credit, as that term is defined in

Title 18, United States Code, Section 891, to wit, loans totaling several thousand dollars to Victim-7, in violation of Title 18, United States Code, Sections 892 and 2.

**Racketeering Act Eleven - Use Of Extortionate Means To Collect Loans From Victim-7**

24. The defendants named below committed the following acts of racketeering, any one of which alone constitutes the commission of Racketeering Act Eleven:

a. In or about 2006, in the Southern District of New York and elsewhere, DANIEL LEO and JOSEPH LEO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to participate in the use of extortionate means to collect and attempt to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, DANIEL LEO and JOSEPH LEO collected payments from Victim-7 based on the implicit threat of the use of violence and other harm if Victim-7 did not repay various loans and debts, in violation of Title 18, United States Code, Section 894.

b. In or about 2006, in the Southern District of New York and elsewhere, DANIEL LEO and JOSEPH LEO, the defendants, unlawfully, willfully, and knowingly participated in the use of extortionate means to collect and attempt to collect

extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, DANIEL LEO and JOSEPH LEO collected payments from Victim-7 based on the implicit threat of the use of violence and other harm if Victim-7 did not repay various loans and debts, in violation of Title 18, United States Code, Sections 894 and 2.

**Racketeering Act Twelve –**
**Extortionate Loans To Victim-8**

25. The defendants named below committed the following acts of racketeering, either one of which alone constitutes the commission of Racketeering Act Twelve:

a. From in or about late 2007, up through and including in or about July 2008, in the Southern District of New York and elsewhere, FELICE MASULLO, ANGELO MASULLO, and ANTHONY MASULLO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to make extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, loans totaling approximately $41,000 to Victim-8, in violation of Title 18, United States Code, Section 892.

b. From in or about late 2007, up through and including in or about July 2008, in the Southern District of New York and elsewhere, FELICE MASULLO, ANGELO MASULLO, and ANTHONY

MASULLO, the defendants, unlawfully, willfully, and knowingly made extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, loans totaling approximately $41,000 to Victim-8, in violation of Title 18, United States Code, Sections 892 and 2.

c. From in or about late 2007, up through and including in or about July 2008, in the Southern District of New York and elsewhere, FELICE MASULLO, ANGELO MASULLO, and ANTHONY MASULLO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly advanced money and property, as a loan and investment, and pursuant to a partnership and profit-sharing agreement, and otherwise, to a person, with reasonable grounds to believe that it was the intention of that person to use the money and property so advanced directly and indirectly for the purpose of making extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, the defendants advanced approximately $41,000 to Victim-8 with the explicit understanding that Victim-8 intended to make extortionate extensions of credit to additional individuals, in violation of Title 18, United States Code, Sections 893 and 2.

**Racketeering Act Thirteen –**
**Use of Extortionate Means To Collect Loans From Victim-8**

26. The defendants named below committed the following acts of racketeering, either one of which alone constitutes the commission of Racketeering Act Thirteen:

a. From in or about late 2007, up through and including in or about July 2008, in the Southern District of New York and elsewhere, FELICE MASULLO, ANGELO MASULLO, and ANTHONY MASULLO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to participate in the use of extortionate means to collect and attempt to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, FELICE MASULLO, ANGELO MASULLO, and ANTHONY MASULLO collected payments from Victim-8 based on the implicit threat of the use of violence and other harm if Victim-8 did not repay various loans and debts, in violation of Title 18, United States Code, Section 894.

b. From in or about late 2007, up through and including in or about July 2008, in the Southern District of New York and elsewhere, FELICE MASULLO, ANGELO MASULLO, and ANTHONY MASULLO, the defendants, unlawfully, willfully, and knowingly participated in the use of extortionate means to collect and

attempt to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, FELICE MASULLO, ANGELO MASULLO, and ANTHONY MASULLO collected payments from Victim-8 based on the implicit threat of the use of violence and other harm if Victim-8 did not repay various loans and debts, in violation of Title 18, United States Code, Sections 894 and 2.

**Racketeering Act Fourteen - Conspiracy To Distribute Cocaine**

27. From in or about March 2008, up to and including in or about July 2008, in the Southern District of New York and elsewhere, FELICE MASULLO, ANGELO MASULLO, and ANTHONY MASULLO, the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did combine, conspire, confederate and agree together and with each other to violate the narcotics laws of the United States, to wit, Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(B), in violation of Title 21, United States Code, Section 846. It was a part and an object of the conspiracy that FELICE MASULLO, ANGELO MASULLO, and ANTHONY MASULLO, the defendants, and others known and unknown, unlawfully, intentionally, and knowingly would and did distribute and possess with intent to distribute 500 grams and more of mixtures and substances containing a detectable amount of cocaine.

**Racketeering Act Fifteen - Conspiracy To Distribute Crack Cocaine**

28. From in or about June 2008, up to and including in or about July 2008, in the Southern District of New York and elsewhere, FELICE MASULLO and ANGELO MASULLO, the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did combine, conspire, confederate and agree together and with each other to violate the narcotics laws of the United States, to wit, Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(A), in violation of Title 21, United States Code, Section 846. It was a part and an object of the conspiracy that FELICE MASULLO and ANGELO MASULLO, the defendants, and others known and unknown, unlawfully, intentionally, and knowingly would and did distribute and possess with intent to distribute 50 grams and more of mixtures and substances containing a detectable amount of cocaine base, in a form commonly known as "crack."

**Racketeering Act Sixteen - Illegal Gambling Conspiracy**

29. From at least in or about 2006, up through and including in or about 2007, in the Southern District of New York and elsewhere, DANIEL LEO, CHARLES SALZANO, and JOSEPH LEO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to conduct, finance, manage, supervise, direct, and own all and part of an illegal gambling

business, namely, a sports bookmaking and illegal lottery business, in violation of New York State Penal Law Sections 225.00 and 225.10, and which business involved five and more persons who conducted, financed, managed, supervised, directed, and owned all and part of it, and which business had been and remained in substantially continuous operation for a period in excess of thirty days and had gross revenues of $2,000 in a single day, in violation of Title 18, United States Code, Section 1955.

**Racketeering Act Seventeen - Illegal Gambling Conspiracy**

30. From at least in or about late 2007, up through and including in or about July 2008, in the Southern District of New York and elsewhere, FELICE MASULLO, ANGELO MASULLO, and ANTHONY MASULLO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to conduct, finance, manage, supervise, direct, and own all and part of an illegal gambling business, namely, a sports bookmaking business, in violation of New York State Penal Law Sections 225.00 and 225.10, and which business involved five and more persons who conducted, financed, managed, supervised, directed, and owned all and part of it, and which business had been and remained in substantially continuous operation for a period in excess of

thirty days and had gross revenues of $2,000 in a single day, in violation of Title 18, United States Code, Section 1955.

(Title 18, United States Code, Section 1962(c).)

## COUNT TWO
## Racketeering Conspiracy

The Grand Jury further charges:

31. Paragraphs 1 through 30 of this Indictment are repeated and realleged and incorporated by reference as though fully set forth herein.

32. From at least in or about the early 1990s, up through and including on or about the date of this Indictment, in the Southern District of New York and elsewhere, DANIEL LEO, CHARLES SALZANO, ROCCO PETROZZA, FELICE MASULLO, PATSY AVERSA, VINCENT COTONA, JOSEPH LEO, JOSEPH PETULLO, ANTHONY MASULLO, and ANGELO MASULLO, the defendants, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 11 above, namely, the Genovese Organized Crime Family, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, intentionally, and knowingly combined, conspired, confederated, and agreed together and with each other to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), which pattern

is set forth more fully in paragraphs 13 through 30 above. It was a further part and an object of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

(Title 18, United States Code, Section 1962(d).)

**COUNT THREE**
**Racketeering Conspiracy To Acquire Control Of An Enterprise**

The Grand Jury further charges:

33. Paragraph 1 and paragraphs 3 through 8 of this Indictment are repeated and realleged and incorporated by reference as though fully set forth herein.

34. ANTHONY PALUMBO was, at various times relevant to this Indictment, a Soldier and an Acting Capo in the Genovese Organized Crime Family. PALUMBO was promoted by DANIEL LEO to oversee the operations of various New Jersey-based crews of the Genovese Crime Family in or about 2006. In that capacity, PALUMBO supervised the criminal activities of Genovese Soldier ROCCO PETROZZA and Associates JOSEPH PETULLO and FELICE MASULLO, among others.

35. At all times relevant to this Indictment, a bartending training school in Jersey City, New Jersey ("the Jersey City Bartending School") owned and operated by Victim-1 and Victim-2, constituted an "enterprise," as defined by Title